IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES W. BUCKALOO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-14-502-R |
| v. | ) | |
| | ) | |
| STATE OF OKLAHOMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the action be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

I. Statutory Screening of Prisoner Complaints

The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The same screening of a civil complaint filed *in forma pauperis* is required by 28 U.S.C. § 1915(e)(2). After conducting an initial review, the Court must dismiss a complaint or any portion of it presenting claims that are frivolous, malicious, fail to state a

1

claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

In conducting this review, the Court must accept the plaintiff's well-pleaded allegations as true and construe them, and any reasonable inferences to be drawn from the allegations, in the light most favorable to the plaintiff. Kay v. Bemis, 500 F.3d 1214, 1217 (10th Cir. 2007). Although a pro se litigant's pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520 (1972), "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247-1248 (10th Cir. 2008)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). The allegations in a complaint must present "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Further, a claim is frivolous "where it lacks an arguable basis either in law or in fact" or is "based on an indisputably meritless legal theory." Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989).

II. Complaint

In his Complaint filed May 16, 2014, Plaintiff sues several Oklahoma state officials, including Oklahoma Governor Fallin, former (and deceased) Oklahoma Governor Bellmon, and Oklahoma Department of Corrections ("ODOC") Director Patton. Plaintiff also sues Defendant Gilliam in his capacity as ODOC's Administrator of Probation and Parole, Defendant George, who is identified as a revocation hearing prosecutor, Defendant Romaine, who is identified as a revocation hearing officer, and Defendant Janis, who is identified as an ODOC official in the Southwest District Community Corrections Department.

In his Complaint, Plaintiff alleges that he was convicted in Case No. CRF-1983-16 and sentenced to prison, that against his wishes he was placed in Oklahoma's now-defunct Preparole Conditional Supervision Program ("PPCS")[1], and that he was arrested and detained in the Atoka County jail and returned to ODOC custody. He was later assigned to a public works project in Madill, Oklahoma, released from custody, and convicted of a federal charge of felony possession of a firearm. He was "given a vigilante styled kangaroo trial" in the United States District Court for the Eastern District of Oklahoma in October 1992 in which there was no evidence presented to support a conviction and the federal district judge "appointed plaintiff's ex-prosecutor to represent him" and "refused to allow plaintiff's ten eye-witnesses to testify in his behalf or to allow Plaintiff to confront the government's paid technical witnesses." Complaint, at 9. Plaintiff alleges he was convicted of the offense and sentenced to a 22-year term of imprisonment.

He alleges Oklahoma officials placed a detainer against his federal sentence for a state parole violation. He also alleges that in July 1993 he was visited by an ODOC official who advised him of his rights by giving him notice of a finding of probable cause that he had committed a parole violation, but "no documentation or evidence of any kind was presented to show that a parole grant did in fact exist." Complaint, at 10.

Plaintiff was released from federal custody on July 12, 2012, and on that same date "kidnapped from Colorado by two bounty hunters hired by the Oklahoma Dept. of

---

[1] "Oklahoma's PPCS program was abolished in 1997." Boutwell v. Keating, 399 F.3d 1203, 1207 n. 1 (10th Cir. 2005).

Corrections to bring Plaintiff back to Oklahoma for parole violation" charges on the Oklahoma conviction and sentence that "legally expired in 1992." Complaint, at 10.

He alleges that "Now, (24) years after the expiration of Case No. CRF-1983-16 the defendants seek to revocate [sic] the alleged parole to once again imprison Plaintiff after they kidnapped him from the state of Colorado without a lawful extradiction [sic] order" and that he "has now served thirty-one (31) years on a eighteen (18) year sentence." Complaint, at 2.

Plaintiff states that an executive parole revocation hearing was conducted on November 27, 2012. The Complaint also contains voluminous allegations related to the conditions of his confinement in state and federal prisons from 1989 onward. There are vague allegations throughout the 27-page pleading of conspiracies, threats, false imprisonment, and various wrongs allegedly committed against Plaintiff and his family members.

In count one, Plaintiff alleges "the alleged parole grant of October 17, 1990 induced through coersion (sic), threats and fear using deceptive tactics known as 'bait and switch' and secrecy in violations of due process requirements and equal protection of the law, under the fourteenth United States constitutional amendment." Complaint, at 4-5. Plaintiff also alleges the 1990 "parole grant" also violated the Oklahoma constitution and an Oklahoma statute, Okla. Stat. tit. 57, § 365. Complaint, at 4-5.

In count two, Plaintiff alleges he was subjected to unlawful imprisonment when "Defendants" hired private bounty hunters to enter the State of Colorado and he was

4

"kidnapped" without a "properly executed extradiction [sic] order." Plaintiff alleges his sentence in Case No. CRF-1983-16 actually expired on February 3, 2001, or "in 1992 through earn[ed] credit deductions," and that his double jeopardy rights under the Fifth, Sixth, and Fourteenth Amendments were violated.

In count three, Plaintiff alleges he was subjected to "unnecessary force" and cruel and unusual punishment and "discrimination" in violation of the Fourth, Eighth, and Fourteenth amendments. The claims in count three relate to Plaintiff's arrest in Atoka County, Oklahoma, in June 1990 his subsequent detention in the Atoka County jail for a 12-day period of time, his subsequent imprisonment in the Howard McLeod Correctional Facility from June 19, 1990, through August 7, 1990, his "premature[ ]" release on August 7, 1990, and his subsequent federal conviction and imprisonment, including an 11-year period of confinement at the ADX supermax prison in Florence, Colorado "locked in a maximum security isolation cell." Complaint, at 12-13.

Plaintiff alleges that after he was "kidnapped" and returned to Oklahoma he was transferred to the Lexington Reception and Assessment Center where he was "locked in a isolation cell. Plaintiff spent twenty-four hours in this cell without food, water, a bed or his medications for a heart condition, high blood pressure, hypothyroidism, and internal bleeding hemorrhoids." Complaint, at 14. He alleges that "only after kicking and beating on the door for hours did anyone come to check on him. The receiving officer had neglected to record plaintiff's arrival in the computer and no one knew plaintiff was in the cell or had arrived to the prison." Complaint, at 14.

5

Plaintiff alleges that on August 8, 2012, he "refused to go back into his cell" and a correctional officer, Officer Swift, "snuck up behind plaintiff and violently rammed his head into the concrete wall," knocking Plaintiff unconscious and causing profuse bleeding, but "the prison guards continued to kick and beat him. A few guards later admitted the attack was in revenge for the 1973 prison riot at McAlester Oklahoma State Prison." Complaint, at 14. Plaintiff alleges he was transferred to a hospital for medical treatment and then placed in an isolation cell "for weeks" while experiencing black outs, vomiting, and internal bleeding, that he was found guilty of a misconduct for assaulting a staff member, "even though no one was assaulted but Plaintiff." Complaint, at 14. Plaintiff alleges the punishment for the misconduct included the forfeiture of 365 days of earned credits and that he was transferred to the Davis Correctional Facility in Holdenville, Oklahoma on August 31, 2012, where he was celled with members of a white supremacist prison gang and he "lived in fear day and night that his Indian heritage would be revealed." Complaint, at 15.

Plaintiff alleges that in October 2012 he "stopped eating due to the uncertainty and intense anxieties from his situation" and he was placed "in a suicide cell in the hospital." Complaint, at 15. At an executive parole revocation hearing "promised to plaintiff on July 20, 1993" Plaintiff was "not allowed to speak in his own behalf" and he was "informed that he must serve the entire eighteen (18) year sentence from 1983 all over again day for day." Complaint, at 15. Plaintiff alleges he then attempted suicide on two occasions by cutting his wrists and that "soon thereafter Gov. Mary Fallin finally revocated [sic] the non-existent parole grant." Complaint, at 15. Plaintiff alleges he was not able to earn credit deductions

or participate in educational or rehabilitative programs prior to the revocation of his parole and that he was "further deprived of earn[ed] credits through the coersed [sic] participation in the PPCS program" and "the compelled and secretive mandatorily imposed parole grant."

In count four, Plaintiff alleges that the parole revocation violated his due process and equal protection rights. Plaintiff admits that he was provided a probable cause interview with an ODOC correctional official in June 1993 with notice of the finding by state officials of probable cause to believe he had violated the terms and conditions of his parole and notice of the revocation hearing. Complaint, at 10, 17. Plaintiff also admits that on July 19, 1993, a parole violator warrant was lodged as a detainer with federal authorities. Plaintiff alleges that the 20-year delay between the probable cause portion of the revocation and the final revocation hearing violated his due process rights. Plaintiff also alleges that "[o]n November 27, 2012, Plaintiff was taken to a secret location in total surprise," which is construed as an assertion that he had no notice of the final revocation hearing, even though Plaintiff admits that he received notice of the parole violator charge and the revocation hearing at the probable cause interview conducted in 1993.

Plaintiff alleges "the hearing presecutor [sic] arbitrarily terminated the hearing" and "the probation and parole supervisor Gary Newman who knew the truth and facts and circumstances was not allowed to attend the hearing but was replaced with Dwayne Janis another state employee who had no personal knowledge of the contested facts and circumstances." Complaint, at 18. He alleges that the parole revocation hearing panel "consisted of paid prosecutors for the state and/or members connected to the revocation

7

recommendation from 1998" and were biased. Complaint, at 18. He alleges that the parole revocation hearing panel's report to the Governor was prejudicial, mistated Plaintiff's position and omitted facts and evidence. "The only thing plaintiff was alleged to have done is being found guilty by a prejudicial vigilante style kangaroo trial on October 10, 1993." Complaint, at 18.

In count five, Plaintiff alleges he was "compelled to be a witness against himself in violations of the 5th, 6th, [and] 14th amendments." Complaint, at 19. Plaintiff alleges that during the revocation hearing conducted on November 27, 2012, "Defendants" presented the "rules and conditions of parole agreement dated December 1, 1989" as evidence. But he alleges he was "compelled against his will" to sign the December 1989 rules and conditions of parole agreement and he was not informed that the agreement could be used against him in the future and believed that the December 1989 agreement was related only to his PPCS participation.

In count six, Plaintiff alleges that he was subjected to "unlawful imprisonment under ex post facto law prohibitions in violation of Section 15 Article 2 of the Oklahoma Constitution and Article 1, 9, cl 3; Art 1, 10 cl 1 of the U.S. Constitution." Complaint, at 22. The gist of this claim, although difficult to comprehend, is apparently that Plaintiff's sentence for the conviction in Case No. CRF-1983-16 expired in 1992 or 1998 or 2001, prior to the revocation of his parole.

As relief, Plaintiff requests his "immediate release from prison" and monetary damages. Complaint, at 27.

III. Background

A Certificate of Revocation, a copy of which is attached to Plaintiff's Complaint, reflects that on February 18, 2013, Plaintiff's parole in Case No. CRF-1983-16 was revoked by Oklahoma Governor Fallin following a hearing conducted on November 27, 2012, for violating the rules and conditions of his parole (specifically, the rule prohibiting him from violating any city, state, or federal law during the term of his parole as a result of his federal conviction) and he was ordered to be incarcerated to serve the remaining portion of the term concurrently with the new terms of imprisonment he received in Case No. CR-92-038-S, with no credit for street time. Complaint, Ex. D.

In 1992, Plaintiff was convicted in the United States District Court for the Eastern District of Oklahoma of one count of being a felon in possession of a firearm and a second count of acquiring a firearm by a false statement. He was sentenced to concurrent prison terms of 262 months on the first count and 33 months on the second. He appealed the convictions and sentences, and the Tenth Circuit Court of Appeals affirmed in March 1994. United States v. Buckaloo, 1994 WL 95969 (10th Cir. 1994).

In 2007, Plaintiff challenged his federal sentences in a 28 U.S.C. § 2255 petition filed in the United States District Court for the Eastern District of Oklahoma. The district court dismissed the petition as time-barred, and the Tenth Circuit Court of Appeals affirmed the decision. United States v. Buckaloo, 257 Fed. App'x. 88, 2007 WL 4230696 (10th Cir. 2007).

IV. Counts One, Two, Five, and Six - Failure to State a Claim

One of Plaintiff's many convoluted allegations in the Complaint, which is alleged as

support for his due process, equal protection, double jeopardy, and unlawful imprisonment claims in counts one, two, and six, is that he was never legally paroled in October 1990 in Case No. CRF-1983-16 because his parole was effected without his voluntary consent and because no valid parole document exists. Building on this allegation that he was never paroled from his sentence in Case No. CRF-1983-16, Plaintiff alleges that his sentence expired at some date (he mentions several dates in the Complaint) prior to the time he was taken into custody pursuant to the parole violator warrant in July 2012.

But these allegations are wholly contradicted by the documentary evidence Plaintiff has attached to the Complaint. This evidence includes (1) a photocopy of a judgment and sentence reflecting that in the District Court of McClain County, Oklahoma, Case No. CRF-83-16, Plaintiff was convicted of the offense of Robbery with Firearms after former conviction of a felony and sentenced to a 20-year term of imprisonment and (2) a photocopy of a Certificate of Parole reflecting that Plaintiff was sentenced to serve a 20-year term of imprisonment in Case No. 83-16, that he was committed to ODOC custody on February 3, 1983, and that then-Governor Bellmon granted him parole on October 17, 1990, upon the recommendation of the Oklahoma Pardon and Parole Board.[2] Complaint, Ex. B.

Another of Plaintiff's many convoluted allegations in the Complaint, which is asserted as a basis for his due process claim in count five, is that he did not sign or did not voluntarily

---

[2]In Oklahoma, parole decisions are made by the Governor, and it is within the discretion of the Governor whether or not to release an Oklahoma prisoner from confinement to a parole term. Okla. Stat. tit. 57, § 332.

sign the Rules and Conditions of Parole agreement with respect to his parole from the sentence in Case No. CRF-1983-16. Contrary to this allegation, Plaintiff's own documentary evidence attached to the Complaint includes a photocopy of a document entitled "Rules and Conditions of Parole" which sets forth specific conditions for Plaintiff's parole in Case No. CRF-1983-16, including that "I will obey all city, state, and federal laws," and bears Plaintiff's signature attesting that he had read the conditions, understood he must obey the conditions "until the term of my parole expires," understood that "the Governor can revoke my parole at any time if I do not follow these rules or obey the law," and understood "that a finding of guilt, or a plea of guilty or nolo contendere will be evidence that I failed to obey the law" for which he would be arrested and sent back to prison to serve the remainder of his sentence plus any new sentences. Complaint, Ex. C.

The Court "need not accept as true . . . allegations of fact that are at variance with the express terms of an instrument attached to the Complaint as an exhibit and made a part thereof." Jackson v. Alexander, 465 F.3d 1389, 1390 (10th Cir. 1972). In light of the clear evidence that Plaintiff was lawfully paroled in October 1990, based upon his agreement to the Rules and Conditions of Parole signed by him, Plaintiff has not stated a plausible claim for relief in counts one, two, five, and six of the Complaint.

V. Plaintiff's Claims Challenging his Parole Revocation Must be Brought in Habeas Action

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege he or she was deprived of a right "secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Amer. Mfrs. Mut. Ins. Co. v.

11

Sullivan, 526 U.S. 40, 49-50 (1999).  Plaintiff filed this action under 42 U.S.C. § 1983. However, in his Complaint he challenges, in part, the revocation of his parole and seeks his release from imprisonment. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." Hill v. McDonough, 547 U.S. 573, 579 (2006)()(quotation marks and citation omitted).

In Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme Court recognized that certain claims by prisoners concerning state parole procedures were "cognizable under §1983" and "d[id] not fall within the implicit habeas exception" because they did not seek an immediate or speedier release from prison but only a new parole hearing or parole eligibility review. Id. at 82.  But Wilkinson is distinguishable because Plaintiff explicitly seeks his release from prison.  The "traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1972).  Moreover, "[i]n this circuit, a prisoner who challenges the fact or duration of his confinement and seeks immediate release or a shortened period of confinement, must do so through an application for habeas corpus." McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 812 (10th Cir. 1997). Therefore, Plaintiff must bring his claims that (1) the parole revocation was unlawful because he had discharged the sentence prior to his arrest on the parole violator warrant, (2) he is being unlawfully imprisoned because the parole revocation violated his constitutional rights, and (3) his transfer from Colorado to Oklahoma violated his due process rights in a separate 28 U.S.C. § 2254 petition.

The cause of action should not be construed as one brought under 28 U.S.C. § 2254

because rules governing the filing of habeas actions by state prisoners restrict the ability of habeas litigants to file more than one habeas action challenging a conviction. Construing this action as one brought under 28 U.S.C. § 2254 could preclude Plaintiff from asserting all of the claims he could assert in a 28 U.S.C. § 2254 action challenging his parole revocation. Moreover, there is no evidence that Plaintiff has exhausted available state remedies with respect to the challenged parole revocation sentence. See Okla. Stat. tit. 22, § 1080(e) (providing that a defendant alleging his parole was "unlawfully revoked" may challenge the revocation in a state post-conviction proceeding).

Accordingly, Plaintiff's claims in counts two, three, four, five, and six challenging his parole revocation, his unlawful imprisonment, and his transfer from Colorado to Oklahoma pursuant to the parole violator warrant should be dismissed without prejudice to a 28 U.S.C. § 2254 action following exhaustion of state remedies.

VI. <u>Plaintiff's Claims Seeking Damages under 42 U.S.C. § 1983 for Alleged Constitutional Deprivations Connected with his Parole Revocation and Misconduct Conviction are Barred by Heck</u>

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court recognized that damages may not be recovered in a 42 U.S.C. § 1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by

13

a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 487.

Plaintiff alleges in the Complaint that he was deprived of his constitutional rights, in part, because his parole was revoked without sufficient evidence and in violation of his due process rights to timely notice, the opportunity to be heard, and a timely revocation hearing. Plaintiff also alleges he has been falsely and unlawfully imprisoned. There is no evidence that Plaintiff's parole revocation sentence has been vacated or declared invalid by a court. Thus, the Plaintiff's claims in counts two, three, four, five, and six seeking damages for unlawful imprisonment or unconstitutional parole revocation are barred by Heck and should be dismissed without prejudice.

Additionally, Plaintiff's § 1983 claims for damages concerning a misconduct conviction he received after he was returned to state custody in 2012, including his claim that the misconduct conviction was not supported by the evidence because he was subjected to excessive force and he did not assault the correctional officer, are barred by Heck as Plaintiff has not shown that the misconduct conviction has been invalidated or reversed. See Edwards v. Balisok, 520 U.S. 641, 646 (1997)(applying Heck to § 1983 challenges to institutional disciplinary proceedings).

Moreover, Plaintiff's claims challenging the misconduct conviction and resulting loss of earned sentence credits, to the extent Plaintiff seeks to have the misconduct conviction and punishment reversed, are not cognizable in this action and should be brought in a 28 U.S.C. § 2241 petition. See Naves v. Bigelow, ___ Fed. App'x. ___, 2014 WL 1688194, *1 n. 1 (10th Cir. 2014)(unpublished op.)("§ 2241 is the proper vehicle for an attack on the execution

14

of a sentence.")(citing Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000)).

VII. Statute of Limitations Bar; Failure to State a Claim Regarding Claims Not Barred by Statute of Limitations

A court may "consider affirmative defenses sua sponte" for the purpose of dismissal under 28 U.S.C. § 1915 "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." Fratus v. Deland, 49 F.3d 673, 674-675 (10th Cir. 1995)(quotations and alterations omitted). In this case, it is clear from the Complaint that many of Plaintiff's § 1983 claims are barred by operation of the applicable two year statute of limitations.

Because 42 U.S.C. § 1983 contains no specific statute of limitations, federal courts apply state statutes of limitations for personal injury actions in section 1983 actions. Wilson v. Garcia, 471 U.S. 261, 276 (1985). For section 1983 actions arising in Oklahoma, Oklahoma's two year statute of limitations for personal injury suits applies. Meade v. Grubbs, 841 F.2d 1512, 1522 (10th Cir. 1998). Plaintiff's Complaint provides no allegation or evidence to support the application of Oklahoma's limited tolling exceptions. See Alexander v. Oklahoma, 382 F.3d 1206, 1217 (10th Cir. 2004).

As it is "clear from the face of the complaint that there are no meritorious tolling issues," the time-barred § 1983 claims should be dismissed *sua sponte*. Vasquez Arroyo v. Starks, 589 F.3d 1091, 1097 (10th Cir. 2009). Thus, all of the claims Plaintiff asserts in the Complaint challenging the conditions of his confinement that occurred more than two years prior to the date on which he filed his Complaint, May 16, 2014, or on or before May 16,

2012, in counts three and six are barred by the statute of limitations.

Plaintiff's allegations in count three concerning the conditions of his confinement and the adequacy of medical treatment he received following his return to state custody in July 2012 would not be barred by the applicable statute of limitations. However, Plaintiff has not stated a claim for relief under 42 U.S.C. § 1983 concerning these allegations against any of the named Defendants. "Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997); see Jenkins v. Wood, 81 F.3d 988, 994-995 (10th Cir. 1996)("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation.")(internal citation omitted). Plaintiff's allegations against the Defendants are based solely on their supervisory capacity. "Section 1983 does not authorize liability under a theory of respondeat superior." Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011). Thus, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," not the conduct of individuals being supervised. Aschcroft v. Iqbal, 556 U.S. 662, 677 (2009). See Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008)("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.")(internal quotations omitted). "The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 767 (10th Cir. 2013).

To sufficiently allege the personal involvement of a supervisor, "a plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. The plaintiff must also "show that the defendant's alleged action(s) caused the constitutional violation." Schneider, 717 F.3d at 768. See Wilson v. Montano, 715 F.3d 847, 858 (10th Cir. 2013)("To establish a violation of §1983 by a defendant-supervisor, the plaintiff must establish, at a minimum, a deliberate and intentional act on the part of the supervisor to violate the plaintiff's legal rights.").

Plaintiff has not alleged that any of the Defendants participated in the allegedly unconstitutional conditions of his confinement following his return to state custody or were involved in his medical treatment. He has shown no affirmative link between any of the conditions of his confinement or medical treatment and the actions of one of the Defendants. Therefore, these claims in count three should be dismissed without prejudice.

RECOMMENDATION

Based on the foregoing findings, it is recommended that Plaintiff's cause of action be DISMISSED without prejudice pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B) for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983. It is further recommended that the dismissal of this cause of action count as one "prior occasion" or "strike" pursuant to 28 U.S.C. § 1915(g). See Hafed v. Fed. Bureau of Prisons, 635 F.3d 1172, 1176, 1177 (10th Cir. 2011)("When an action or appeal is dismissed as frivolous, malicious, or for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B), the dismissal counts as a strike" and "a dismissal under [28 U.S.C. ] § 1915A counts as a strike when the

action was dismissed as frivolous, malicious, or for failure to state a claim . . . ."). Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by       June 25th       , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   5th   day of   June   , 2014.

_____
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE